## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **OMAR FRANKLIN, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.** |
| | ) | **16-10484-FDS** |
| **CITY OF BOSTON; DETECTIVE RYAN** | ) | |
| **MASON; and DETECTIVE ERIC MERNER,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

_____

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, J.**

This is a *pro se* civil rights action.  Plaintiff Omar Franklin, Sr., has brought suit against

the City of Boston and police officers Ryan Mason and Eric Merner.[1]  The complaint alleges that

Mason failed to protect Franklin and the public by not arresting and detaining a person suspected

of firing gunshots at his home.  The complaint also alleges that Merner destroyed property while

executing a search warrant at Franklin's home.  According to the complaint, the actions of

Mason and Merner demonstrate a pattern of harassment, intimidation, and retaliation by the

Boston Police Department in the African-American community in Boston.

Although the complaint does not assert a specific cause of action, liberally construed, it

appears to allege claims under 42 U.S.C. § 1983.  Mason and the City have moved to dismiss the

---

[1] The complaint names both the City of Boston and the Boston Police Department as defendants.  However, the Boston Police Department is a municipal department of the City rather than an independent legal entity that is subject to suit.  *See Henschel v. Worcester Police Dep't*, 445 F.2d 624, 624 (1st Cir. 1971) (explaining that "the Police Department [is not] a suable entity"); *Stratton v. City of Bos.*, 731 F. Supp. 42, 46 (D. Mass. 1989) ("[T]he [Boston] Police Department is not an independent legal entity.  It is a department of the City of Boston."); *accord Winfield v. Perocchi*, 2015 WL 4482940, at *3 (D. Mass. July 22, 2015) (treating claims against the Lawrence Police Department as claims against the City of Lawrence).  Accordingly, the Court will treat any claims against the Boston Police Department as if they were properly pleaded against the City.

claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[2]  Even under a liberal construction, the complaint's allegations against Mason and the City fail to state a claim.  Accordingly, and for the reasons set forth below, the motions to dismiss will be granted.

## I.     <u>Background</u>

The following facts are accepted as true and stated as alleged in the *pro se* complaint, with clarification concerning certain allegations provided by plaintiff during the motion hearing.

### A.     <u>Factual Background</u>

At some unspecified date, an unidentified individual fired several gunshots into the home of Omar Franklin, Sr., in Boston.  (Compl. ¶ 2).  Apparently, Franklin reported the incident to the Boston Police Department, and Detective Ryan Mason began to investigate.  After Mason texted Franklin a photo of a suspect, Franklin confirmed that the photographed individual was indeed the shooter.  (*Id.*).  The complaint alleges that Franklin "never heard back from [Mason] and when [he] did make inquiries, [he] was threat[ened] like [his] life and those around [him] did not matter."  (*Id.*).  It is unclear who threatened him.  The complaint alleges that Mason was "der[e]l[i]ct" and "failed to do his duty" by "allowing a dangerous individual to roam the community."  (*Id.*).

In February 2015, the Boston Police Department obtained a warrant to search Franklin's home.  (*Id.* ¶ 3).  The complaint alleges that the warrant was in some way connected to a guest staying with him.  (*Id.*).  During the search, Detective Eric Merner, "a partner of [Mason]," led a SWAT team in conducting a "military-type assault" on the home.  (*Id.* ¶ 4).  The complaint alleges that police arrested "a couple" individuals in the home during the search, including a

---

[2] Merner has not moved to dismiss the claim against him arising out of the search of the home.  Instead, he has filed an answer.  (Dkt. 12).

young man who was carrying a weapon.  (*Id.* ¶ 6).  After the SWAT team left Franklin's home,

Merner and his partners "ransacked" it, destroying Franklin's music and computer equipment.

(*Id.* ¶ 7).  Although it is not clear from the complaint, Franklin clarified during the motion

hearing that Mason was not a part of the police team that conducted the search.

The complaint alleges that, at some point, "the Boston Police or one of their [confidential

informants] came and put a dead rat right by [Franklin's] car door," and that he "is afraid for

[his] safety because of the Boston Police Department, [and] what [Mason] and [Merner] did."

(*Id.* ¶ 11).  It also alleges that defendants violated Franklin's "civil right to equal protection under

the law" and that they have a "policy" of harassment, intimidation, and retaliation in the African-

American community in Boston.  (*Id.* ¶ 1).

### B.    Procedural Background

Franklin filed the complaint on March 8, 2016.  Mason and the City have each moved to

dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim

upon which relief can be granted.

## II.    Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and

give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness*

*Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its

face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must

be enough to raise a right to relief above the speculative level, . . . on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  However, while *pro se* complaints are accorded an "extra degree of solicitude", *Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir. 1991), they still must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1998).

## III.   <u>Analysis</u>

Although the complaint does not refer to 42 U.S.C. § 1983 specifically, liberally construed, it appears to asserts claims against each defendant under that statute.  Section 1983 "creates a private right of action for redressing abridgements or deprivations of federal constitutional rights." *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir. 1995).  "A claim under § 1983 has two 'essential elements':  the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008).

4

Mason contends that the claim against him should be dismissed because the complaint does not allege that his actions deprived plaintiff of a constitutional right, and even if they did, he is entitled to qualified immunity.  The City contends that the claim against it should be dismissed because the complaint fails to plausibly allege that an official policy caused plaintiff to suffer a constitutional violation within the meaning of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  The Court will address each issue in turn.

### A.      Claim Against Mason

It is undisputed that Mason is a state actor being sued for actions taken pursuant to his official duties; the issue is solely whether his actions deprived plaintiff of his constitutional rights.  From the face of the complaint, the source of the substantive rights allegedly infringed by Mason is unclear.  Given the nature of the allegations, the Court will construe the complaint as identifying the Fourteenth Amendment as the source of the substantive rights allegedly infringed by Mason.[3]  The only allegations relevant to Mason appear in the second paragraph of the complaint, which reads as follows:

> Detective Mason of the Boston Police was der[e]l[i]ct in his duty in executing the duty that the public [e]ntrust[ed] him with, equal protection under the law.  He failed to do his duty by allowing a dangerous individual to roam the community who had just dump[ed] seven to eight gunshots on young people, pregnant young girls, and family members [e]ntering my home.  Detective Mason texted me a photo of the individual and I confirmed that was indeed the person.  I never heard back from Detective Mason and when I did make inquiries I was threat[ened] like my life and those around me didn't matter.

(Compl. ¶ 2).  The complaint does not allege that Mason threatened plaintiff.  Instead, it appears to assert a claim against Mason for his failure to apprehend the alleged shooter and prevent

---

[3] As to the claim against Merner arising from the search of plaintiff's home, the sources of the underlying rights are the Fourth and Fourteenth Amendments.  However, even plaintiff concedes that Mason was not involved in the search, and the only alleged connection between Mason and Merner—which plaintiff provided during the hearing—is that they know each other from working in the same department.

plaintiff from feeling threatened.

"The Supreme Court has said that only in very rare situations will the state's failure to protect someone amount to a constitutional violation, even if the state's conduct is grossly negligent." *Rivera v. Rhode Island*, 402 F.3d 27, 30 (1st Cir. 2005).  In order to establish a substantive due process claim under the Fourteenth Amendment, a plaintiff must show that the deprivation of a protected right was caused by governmental conduct.  *Id.* at 34.  As the First Circuit has explained in affirming a dismissal of a plaintiff's § 1983 claim against a city for failing to protect her daughter, who was murdered in connection with her anticipated testimony in a murder trial:

> That [requirement of causation] is easily met when a government actor causes the injury, such as when police officers act under color of law.  *See Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) ("To be sure, violence is attributable to state action if the perpetrator is acting under color of state law.").  It is much more difficult when the person who inflicts the injury is a private person.  The Due Process Clause acts as a check on the government, not on actions by private individuals.  Here, of course, the person who killed [plaintiff's daughter] was a private individual.  Nonetheless, there are possible scenarios of government involvement with a private individual which amount to government conduct—for example, if the police had handed the murderer the gun with instruction to shoot her, *cf. Hemphill v. Schott*, 141 F.3d 412, 418-19 (2d Cir. 1998), or assured [the murderer] that he could attack [plaintiff's daughter] with impunity, *cf. Dwares v. City of New York*, 985 F.2d 94, 96-97 (2d Cir. 1993).  That is certainly not the case.  The claimed governmental involvement in causing [the daughter's] death was much more indirect:  the government is said to have enhanced the danger posed by a private individual and then failed to protect against this risk.

> The Supreme Court has stated that as a general matter, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).  That is because the purpose of the Due Process Clause is to protect the people from the state, not to ensure that the state protects them from each other.  "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security," *id.* at 195, because "[t]he Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes," *id.* at 196.

*Id.*

However, the Supreme Court has recognized that the general principle expressed in *DeShaney*—that the state is not liable under § 1983 for failing to prevent harm caused by a private individual—is "not absolute." *Id.* There are at least two exceptions. First, in situations where there is a "special relationship" between the state and the harmed individual, an affirmative constitutional duty to protect may arise. Such a circumstance may arise when the state "so retrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *Id.* (quoting *DeShaney*, 489 U.S. at 200). A "special relationship" may thus exist when an individual is incarcerated or is involuntarily committed to the custody of the state. *Id.* (citing *Monahan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987, 991-92 (1st Cir. 1992)). Second, an affirmative duty to protect may arise where the state itself creates a danger to an individual. *Id.* at 35 (citing *DeShaney*, 489 U.S. at 201). However, that exception is fairly limited; as the First Circuit has explained:

> Even if there exists a special relationship between the state and the individual or the state plays a role in the creation or enhancement of the danger, under a supposed state created danger theory, there is a further and onerous requirement that the plaintiff must meet in order to prove a constitutional violation: the state actions must shock the conscience of the court. . . .

> In determining whether the state has violated an individual's substantive due process rights, a federal court may elect first to address whether the governmental action at issue is sufficiently conscience shocking. *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). The state action must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* "[C]onduct *intended* to injure in some way *unjustifiable* by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849 (emphasis added). Of course, whether behavior is conscience shocking varies with regard to the circumstances of the case. . . .

> Keeping all of this in mind, we echo the caution articulated [previously]: in a state creation of risk situation, where the ultimate harm is caused by a third party, "courts must be careful to distinguish between conventional torts and constitutional violations, as well as between state inaction and action." *Soto v. Flores*, 103 F.3d 1056, 1064 (1st Cir. 1997).

7

*Id.* at 35-36.  In *Rivera*, the First Circuit held that neither exception applied to the state's failure to protect a murder witness.  There was not a "special relationship" between the state and the witness sufficient to create a duty to protect, and the state did not create or enhance the harm by subpoenaing her to testify, even in the face of previous death threats.  *Id.* at 37-38.

Here, the complaint's allegations do not demonstrate a special relationship between plaintiff and Mason.  Nor do they demonstrate that Mason created or enhanced a danger to plaintiff, or even that he failed to prevent a danger after the initial shooting incident.  Rather, the complaint alleges a claim against Mason because plaintiff "never heard back" from him concerning the suspected shooter, and Mason failed to arrest and detain that person.  If such a theory were tenable, liability under § 1983 for officers investigating crimes would have a limitless scope.  However, only in "very rare" situations will the state's failure to protect someone amount to a constitutional violation, even if the state's conduct is "grossly negligent." *Id.* at 30.  Even accepting the complaint's allegations as true, they do not present one of those situations, and the claim against Mason must be dismissed.

### B.        Claim Against the City

The complaint's allegations concerning the City's purported policy or custom are difficult to understand.  In their entirety, those allegations read as follows:

> The reason for filing this complaint . . . is that [plaintiff's] civil right[s] (1) to
> equal protection under the law[, and] (2) [to be free of] harassment, intimidation,
> and retaliation by Boston police officer[s] named in the complaint as well as the
> Department and the City of Boston and the policy that the Boston Police use in
> the black community.

(Compl. ¶ 1).

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *See Monell*, 436 U.S. at 694.  "[L]iability can be imposed on a local

government only where that government's policy or custom is responsible for causing the constitutional violation or injury." *See Kelley v. Laforce*, 288 F.3d 1, 9 (1st Cir. 2002) (citing *Monell*, 436 U.S. at 690-91).

Under *Monell* and its progeny, in addition to establishing a constitutional deprivation, the plaintiff must show that:  (1) the municipality had a custom, policy, or practice of failing to investigate, discipline, supervise, or train its officers; (2) the custom, policy, or practice was such that it demonstrated a "deliberate indifference" to the rights of those citizens with whom its officers came into contact; and (3) the custom, policy, or practice was the direct cause of the alleged constitutional violation.  *See DiRico v. City of Quincy*, 404 F.3d 464, 468-69 (1st Cir. 2005) (internal quotation marks omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Monell*, 436 U.S. at 690-92.  Practices that are not officially authorized may nonetheless be actionable under *Monell* if they are "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."  *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 13 (1st Cir. 2005); *see also Monell*, 436 U.S. at 691 (informal practice must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law").  "The standard of causation is quite high: the municipal custom or policy must be shown to have been the 'moving force' behind the constitutional injury."  *Beal v. Blache*, 2005 WL 352861, at *2 (D. Mass. Feb. 14, 2005) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981)).

Here, even liberally construed, the complaint falls considerably short of pleading a plausible municipal policy that was the moving force behind a constitutional violation.  The Court will assume that the complaint relies on the claim against Merner arising out of the destruction of property during the search of plaintiff's home.  In any event, the complaint makes

little attempt to plead a custom or policy—such as an unofficial policy of not training or supervising search teams or disciplining officers that damage property—and it is difficult for the Court to make sense of the allegations.  The complaint merely alleges that a "policy" of "harassment, intimidation, and retaliation" was used by the Boston Police Department in the African-American community, but it is unclear if it is limited to only that community, or if it is used in executing all search warrants.  The complaint cites no official policy, documents, or training manuals, and it alleges no facts to suggest that an unofficial custom was so "widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."  *Whitfield*, 431 F.3d at 13.

Put simply, to allege a plausible *Monell* claim, a plaintiff—even one proceeding *pro se*— must at the very least articulate a specific policy that is connected to certain constitutional violations.  Even accepting the complaint's allegations as true and drawing all reasonable inferences on behalf of the *pro se* plaintiff, it is difficult to understand precisely what the alleged policy or custom is.  Without more, the City and the Court are left to guess at what the specific alleged policy is.  However, under the circumstances, including the case's early stage, the ongoing claim against Merner, and plaintiff's *pro se* status, the Court will dismiss the claim against the City without prejudice.  Plaintiff may seek an opportunity to amend the complaint to clarify the alleged policy and to add appropriate factual allegations in its support.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, even accepting the complaint's allegations as true, it fails to state a claim upon which relief can be granted against Detective Mason and the City of Boston. Accordingly, defendants' motions to dismiss are GRANTED.

**So Ordered.**


                                                        /s/ F. Dennis Saylor IV
                                                        F. Dennis Saylor IV
Dated: August 30, 2016                                  United States District Judge